## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

RICHARD D. DELL, JR.,    )
          )
   Plaintiff,    )
          )
   v.      ) Case No. 1:24-cv-207-AZ
          )
FRANK BISIGNARO,    )
Commissioner of Social Security,  )
          )
   Defendant.   )

## OPINION AND ORDER

This matter is before the Court on Plaintiff Richard D. Dell, Jr.'s appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] For the reasons discussed, the Court agrees with the Commissioner that the Administrative Law Judge's ("ALJ") written decision was supported by substantial evidence and should be affirmed.

### Background

Plaintiff Dell was 49-years old at the onset of the alleged disability, which he claims was December 5, 2013. A.R. 1877, 1887.[2] Dell graduated high school and previously worked as a machine operator. A.R. 1887, 1915.

Dell filed two applications for Social Security Disability Insurance and Supplemental Security Income benefits on August 7, 2015, and August 18, 2025,

---

[1] On July 24, 2024, both parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 14.

[2] Citations to the Administrative Record, filed at DE 10, are throughout as "A.R."

respectively. A.R. 10. His claims were denied in the initial application and upon reconsideration, and Dell thereafter requested a hearing before an ALJ. *Id.* On August 2, 2017, the ALJ held a telephonic hearing at which Dell and a Vocational Expert testified. *Id.*

On November 28, 2017, the ALJ issued a written opinion denying benefits. A.R. 7. Plaintiff timely appealed to the Appeals Council and on September 26, 2018, the Appeals Counsel denied Plaintiff's Request for Review. A.R. 1. Plaintiff timely filed his complaint for review by the District Court, which on August 30, 2019, remanded the case back to the Social Security Administration for failing to include a reasonable pace in Dell's residual functioning capacity (RFC). A.R. 979-80. A new hearing, which included a newly consolidated claim from Dell, was held on April 9, 2020. A.R. 837. On May 4, 2020, the ALJ issued a partially favorable decision, which found that Dell became disabled on March 15, 2019, but not prior to then. A.R. 842. Dell again appealed to the District Court, which on June 30, 2022, remanded the case back to the Social Security Administration. A.R. 1945. The Appeals Council vacated only the unfavorable portion of the previous decision, and another hearing was held on December 20, 2023. A.R. 1870. On January 31, 2024, the ALJ issued an unfavorable written decision, finding Dell was still not disabled prior to March 15, 2019. A.R. 1867.

At the hearing on December 20, 2023, the ALJ posed questions to the vocational expert. A.R. 1926-27. He posed two hypotheticals which described an individual with impairments and limitations matching Dell and asked the expert to

determine what jobs would be available to this hypothetical person. *Id.* The ALJ specifically stated that "[t]he individual would be able to understand, remember and carry out simple instructions and tasks. There could be occasional interaction with co-workers, supervisors and the public." A.R. 1926.

Because the case had been previously remanded, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981. In that written decision, the ALJ followed the standard five-step process to determine whether Dell was disabled. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 5, 2013. A.R. 1873.

At step two, the ALJ determined that Dell suffered from the following severe impairments: "coronary artery disease; chronic obstructive pulmonary disease; anxiety; depression; and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c))." *Id.* The ALJ held this significantly limits Dell's ability to perform basic work activities as required by SSR 85-28. *Id.* The ALJ found his "right shoulder degenerative joint disease, obesity toward the end of the period considered, migraine history, GERD, hypertension, and degenerative disc disease of the lumbar spine" to be non-severe. *Id.* Dell's physical examinations were unremarkable, and he did not participate in treatment for these non-severe impairments.[3] *Id.*

At step three, the ALJ concluded that Dell does "not have an impairment or combination of impairments that meet or medically equals the severity of" any

---

[3] Dell does not contest any of the ALJ's findings relating to his physical impairments. As such, the Court will leave out of this opinion any discussion of physical impairments.

3

applicable Listing which would presumptively entitle him to a finding of disability. A.R. 1874. The ALJ extensively catalogued Dell's physical impairments. *See infra* n.3. The ALJ also used the "paragraph B" functional assessment of mental disorders criteria to consider the severity of Dell's mental impairments both singly and in combination and whether they meet or equal the criteria of listings 12.04 and 12.06. A.R. 1876. A review of the medical record led the ALJ to conclude that because Dell's mental impairments do not cause a least two "marked" limitations, or one "extreme" limitation, paragraph B was not satisfied. A.R. 1876-77.

The ALJ found Dell has mild limits with understanding, remembering, or applying information. A.R. 1876. Dell's mental status examinations and his ability to function independently with activities of daily life such as taking his medications and attending appointments and therapy demonstrate this mild limitation. *Id.* Dell reported issues with memory, but demonstrated "intact insight, judgement and memory during routine examinations and the consultative examination." *Id.*; A.R. 451-53, 633, 640, 647, 1376-77.

In interacting with others, the ALJ found Dell has a moderate limitation. A.R. 1876. While he reports social phobia and experiencing panic attacks in public, he also spends time with others such as his wife, neighbor, and grandchildren. *Id.* Dell reports getting along with authority figures, family, friends, and neighbors, and the medical record reflects no difficulty interacting appropriately with medical professionals. *Id.* Specifically, he is noted as "cooperative, maintains eye contact, and demonstrates appropriate mood." A.R. 1876, 562, 599, 641, 728, 1376-77.

The ALJ found Dell to have a moderate limitation in concentrating, persisting, or maintaining pace. A.R. 1877. Dell reported motivation issues and that he often does not engage in much activity because his conditions affect his ability to concentrate. *Id.* As a result, he often does not finish what he starts. A.R. 1877, 1210. However, Dell was observed as alert and oriented and was able to maintain his concentration during his medical evaluations. A.R. 1877. Some examples of his concentration include his woodworking hobby and working on his son's four-wheeler. *Id.* Dell was taught from counseling certain coping mechanisms, which support his ability in this area when he follows through with them. *Id.*

Lastly, in adapting or managing oneself, the ALJ found Dell has a mild limitation. *Id.* Dell is able to attend to his own personal care, attend his medical and mental health appointments, shop for himself, and manage his finances. A.R. 1877, 314, 426-28.

The ALJ also considered whether any of Dell's limitations meet the "paragraph C" criteria. A.R. 1877. He notes that Dell's mental impairments have not required medical treatment, mental health therapy, psychosocial therapy, or a highly structured setting. *Id.* Thus, the paragraph C criteria were not met. *Id.*

At step four, the ALJ determined Dell's Residual Functional Capacity (RFC) from December 5, 2013, to March 15, 2019, as:

> [P]erform[ing] light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could occasionally crouch, crawl, kneel, stoop, climb, and occasionally work around hazards such as unprotected heights or unguarded, moving machinery. He was able to frequently balance but could have no exposure to occupational extremes of cold and humidity. The claimant was able to

> understand, remember, and carry out simple instructions and tasks and occasionally interact with co-workers, supervisors, and the public.

A.R. 1877. The ALJ stated, as is standard, that he "considered all symptoms … as consistent with the objective medical evidence and other evidence" in arriving at this RFC. *Id.* After a thorough review of the evidence regarding Dell's physical impairments, the ALJ examined the evidence on Dell's mental impairments. A.R. 1878-81.

First, the ALJ notes that because of the overlap in symptomology in mental impairments, the focus in his analysis was how any mental impairments affected Dell's functioning. A.R. 1881. The ALJ then examined Dell's psychological consultative exam with Dr. Boen in March 2015. *Id.* Dell endorsed his ability to engage in daily tasks, such as self-care, cleaning, and grocery shopping. *Id.*, 451-454. The mental examination was largely unremarkable, though Dr. Boen noted some memory issues and paranoid ideation. A.R. 453. Dr. Boen also stated Dell would be able to concentrate and stay on task, but have trouble getting along with co-workers. *Id.* The ALJ ultimately assigned little weight to Dr. Boen's opinion because he did not clarify the vocational limitations of Dell's symptoms.[4] A.R. 1886. Dr. Boen noted Dell's issues "getting along" with others, which the ALJ found vague but still consistent with Dell's noted issues interacting with others. *Id.*

The ALJ also summarized some of the stressors in Dell's life and the coping mechanisms he uses to handle them. A.R. 1882. His wife's medical issues would

---

[4] *See* 20 C.F.R. § 404.1513(a)(2) (a medical opinion is a statement from a medical source about what you can still do despite your limitation(s) and whether you have one or more impairment-related limitations or restrictions).

induce anxiety and panic attacks, but Dell reported working and doing hobbies would lessen them. *Id.* Through 2014, Dell reported having more good days than bad days, but in November of 2015, he reported increased anxiousness and irritability. *Id.* He continued counseling and using coping mechanisms to alleviate stressors. *Id.*; A.R. 669. By 2017, Dell reported progress with counseling and coping mechanisms and even applied for part-time work. A.R. 1882, 813.

In his examinations with mental health providers, primary care physicians, and specialists, Dell was noted as alert and oriented times three[5], had goal-directed thought process, normal mood, speech, and affect, normal memory, normal judgment, and no indication of hallucinations, delusions, or suicidal or homicidal ideations. A.R. 1882-83, 633, 640, 647, 1377-78. Dell also never required crisis treatment or hospitalization. A.R. 1883. He gets along with medical professionals and friends. *Id.* Based on this, the ALJ concluded that while Dell has a moderate limitation in interacting with others and concentration, persistence, or pace, before March 15, 2019, Dell could understand, remember, and carry out simple instructions and tasks. *Id.* The ALJ further found the "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" because they did not appear as limiting or severe as Dell alleged A.R. 1883.

The ALJ pointed to Dell's numerous statements regarding his daily activities and believed the scope and extent of these activities undermined the reliability of his

---

[5] Aware of person, aware of place, and aware of time.

allegations and that Dell was more capable than he alleged. *Id.* Dell's psychological consultation in March 2015 with Dr. Gange noted he can understand, remember, and carry out unskilled tasks and "attend to tasks for sufficient periods of time to complete tasks." A.R. 1884, 74-75. In November 2015, Dr. Johnson made similar findings on Dell's mental capacity, but stated Dell could follow mildly complex instructions and that he has the attention and concentration to carry out tasks at a reasonable pace and persistence. A.R. 1884, 98-99. These opinions, along with similar findings in 2016 and 2019, were assigned some weight by the ALJ. *Id.* The ALJ concluded the opinions were generally consistent with a moderate limitation in interacting with others and concentrating, persisting, or pace. *Id.* Though Dr. Johnson used the unclear term "reasonable pace," the ALJ assigned it considerable weight and noted it was consistent with the record, particularly Dell's ability to concentrate, persist, and maintain pace in his hobbies and daily tasks. A.R. 1885.

Overall, the ALJ found Dell's "allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations are found to be partially reliable." A.R. 1887. While the nature of the symptoms is consistent throughout the record, the severity and related functional restrictions were generally not supported. *Id.*

With the RFC in mind, at step four, the ALJ concluded that Dell is unable to perform past relevant work. *Id.* Dell's prior occupations as a machine operator are precluded by his RFC. *Id.* Based on his RFC and the testimony of the Vocational Expert, the ALJ determined Dell could perform jobs such as light cleaner, cafeteria

attendant, and officer helper.[6] A.R. 1888. Because the ALJ determined that Dell could perform work that exists in significant numbers in the national economy, the ALJ concluded that he was not disabled. *Id.* Accordingly, the ALJ found Dell not under a disability for the time prior to March 15, 2019. A.R. 1890.

### Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek* 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve

---

[6] The ALJ also summarized and considered Dell's representative's objections to the vocational expert's testimony at the hearing. A.R. 1889. Noting that failing to rule on such an objection was the reason this case was previously remanded, the ALJ overruled the objection because he found the expert adequately explained how she arrived the numbers of jobs in the national economy. This issue is not raised in Dell's briefs, so this small explanation is sufficient to summarize the issue.

conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question is not whether the claimant is in fact disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

An ALJ must articulate their analysis of the evidence in order to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). "An ALJ need not specifically address every piece of evidence," *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2014), but they likewise cannot ignore entire lines of evidence that undercut or contravene their conclusions.

10

"Remand is necessary when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up). The Court "cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)).

Dell argues three errors on appeal: (1) the ALJ erred by cherry picking data and failing to build a logical bridge from the evidence to the RFC; (2) the ALJ failed to properly account for moderate limitations in concentration, persistence, and pace; and (3) the ALJ erred by playing doctor when determine the RFC. DE 21 at 6.

### 1. Did the ALJ cherry pick the record and fail to build a logical bridge from the evidence to the RFC conclusion?

Dell contends the ALJ cherry picked the record by ignoring entire lines of evidence which would have changed the RFC determination. DE 21 at 9. Dell points to the numerous instances in the record noting his anxiety and depression. *Id.* at 10. These issues were reported as severe and affected Dell's life in serious ways, such as requiring him to pull off the road during a panic attack. *Id.* Dell believes the ALJ ignored the worsening of these symptoms and Dell's resulting withdrawal from his friends and family. *Id.* Additionally, Dell claims the ALJ ignored his paranoia by writing there was "no indication" of hallucinations or delusions, despite Dr. Boen's report stating "Delusions/hallucinations: yes, paranoia." *Id.*; A.R. 507.

There are several problems with Dell's argument. First, the ALJ discusses Dell's anxiety and depression numerous times, and even noted them as severe

impairments in step 2. A.R. 1873. However, the ALJ explained that Dell's use of coping mechanisms and his unreliability as to the severity of these symptoms cut against a higher RFC finding. The ALJ specifically noted Dell's presentation to medical professionals as oriented, alert, and generally normal. A.R. 1882-83, 633, 640, 647, 1377-78. The ALJ did not ignore these impairments, he only found them less impairing than Dell alleged. The Court will not re-weigh this evidence. *See Warnell v. O'Malley* 97 F.4th 1050, 1052-53 (7th Cir. 2024).

Dell's claim that the ALJ ignored hallucinations or delusions is similarly unconvincing. The ALJ did refer to Dell's paranoid ideation. A.R. 1881. While the ALJ may have said there was "no indication" of hallucinations or delusions, it is clear he is referring to the numerous instances in the medical record where medical professionals stated the same conclusions. *See* A.R. 1349 ("perceptual disturbances: none"), 1359 ("perceptual disturbances: none"), 2345 ("Perception: no hallucinations"), 2704 ("Perceptual Disturbances: NONE"), 2720 ("Perceptual Disturbances: NONE"). The ALJ weighed the reported paranoia against the other medical evidence showing a distinct lack of such ideation and came to the conclusion that it had little to no impairing effect on Dell. This is the opposite of ignoring entire lines of evidence: he considered the evidence, weighed it, and found it unpersuasive.

### 2. Did the ALJ fail to properly account for moderate limitations in concentration, persistence, and pace?

Dell next argues that the ALJ failed to properly include CPP limitations in the RFC and hypothetical to the vocational expert. DE 21 at 13. This argument comes from a line of cases in the Seventh Circuit starting with *Yurt v. Colvin*, 758 F.3d 850,

857 (7th Cir. 2014). *Yurt*, and its progeny *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) and *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019), stand for the proposition that when an ALJ finds specific CPP limitations in the record, they must provide more detail in the RFC and subsequent hypothetical to the vocational expert than merely saying a claimant can only do "simple, routine tasks." Rather, the vocational expert must be informed of the specific CPP limitations the claimant has. For example, *Crump* was remanded because the ALJ did not mention any durational aspects of the claimant's limitations that he found in the record; that is, he did not say how long the claimant could remain on task or how fast he could work. *Crump*, 932 F.3d at 570 ("observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis.").

Here, the ALJ's RFC said only that Dell could "understand, remember, and carry out simple instructions and tasks and occasionally interact with co-workers, supervisors, and the public." A.R. 1877. On its face, this seems to match the concerns raised in *Crump*. This RFC does not say how long Dell can work, or how fast, and the hypothetical posed to the expert was identical.[7] A.R. 1927. However, this does not mean Dell is entitled to an automatic remand. The Seventh Circuit provided more explanation on this CPP issue in *Lockett v. Saul*, 834 Fed.Appx 236, 239 (7th Cir. 2020). In a situation nearly identical to the instant case, the ALJ in *Lockett* held the

---

[7] The ALJ did pose to the expert a question about a claimant who needs to stand up to walk for five minutes every hour. A.R. 1928. While this might seem like a pace issue, CPP is a mental impairment. Dell's physical impairments, including his need to be sedentary or not, were addressed elsewhere in the ALJ's opinion and were not raised as in issue in the opening brief.

claimant's RFC required a "simple, repetitive, routine work environment with only occasional interaction with the public," nearly identical to Dell's. *Id*. The Seventh Circuit found the ALJ properly relied on the medical evidence which came to the same conclusion. *Id*. The Seventh Circuit explained:

> On the other hand, Lockett points to no evidence that compelled a finding that he required more restrictions than Dr. Reid recommended. Although Lockett testified that anxiety and panic attacks impair his concentration and ability to complete activities, the ALJ concluded that his account was not fully consistent with his recent completion of a college degree and behavior at medical examinations. Lockett does not challenge this determination on appeal. Further, he points to no evidence of *any* limitations specific to pace. A moderate rating in maintaining concentration, persistence, and pace means the claimant is so limited in *at least one of* those areas, not necessarily all three. *See* 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00(F)(3)(f). So Lockett cannot show a need for pace-specific restrictions in his residual functional capacity simply because of the "moderate" designation; he must have evidence of that need, and he cites none. Finally, Lockett's reliance on *Crump v. Saul* is misguided: in *Crump*, the ALJ had disregarded the treating physician's opinion about the claimant's limitations. 932 F.3d at 571. Here, no doctor opined that Lockett had restrictions beyond those the ALJ found.

*Id*. Like *Lockett*, this case is distinguishable from *Crump*, in that the ALJ did not make any specific findings regarding CPP limitations that were not reflected in the more generalized description in the RFC. Dell's allegations were not consistent with the medical record and Dell did not and cannot point to any evidence to show a higher CPP limitation than the ALJ found. Therefore, the ALJ's simplified statement on moderate CPP limitations was sufficient to explain Dell's RFC.

It is also worth noting that the ALJ only ever discusses the CPP in conjunction with Dell's limitation in interacting with others. This is satisfactorily accounted for in the RFC and is supported by the medical evidence. In fact, beyond Dell's subjective

allegations, the bulk of the medical evidence does not seem to show any issues in concentration, persistence, or pace. *See* A.R. 633 ("Attention & Concentration: Normal"), 647, 1377 ("Attention/Concentration: normal"), 1349 ("Concentration: normal), 1359 ("Concentration: normal"). The state agency examinations refer to issues with CPP, but this is limited to Dell's ability to carry out detailed instructions and work with others. A.R. 86 ("moderately limited"). The issue is clearly his understanding of complex instructions, rather than the speed at which he does work or his concentration on that work.

The ALJ adequately considered the moderate limitations of Dell's concentration, persistence, and pace, and the medical record supports his conclusion with more than substantial evidence.

### 3. Did the ALJ play doctor when determining the RFC?

Dell's final contention is that the ALJ did not adopt any medical opinion when determining the RFC and therefore played doctor in doing so. DE 21 at 14. Dell believes the ALJ failure to adopt any medical opinion creates a gap in the evidence which necessarily means there is no logical bridge between the evidence and the RFC. *Id.* at 15. The ALJ gave Dr. Boen's opinion little weight, and the reviewing psychological consultant opinions only some weight, which Dell argues creates the evidentiary gap.

This is simply not true. The ALJ gave Dr. Johnson's opinion "considerable weight." A.R. 1885. He found her opinion, and the other State DDS assessments, to be largely supported and consistent with the record. *Id.* He only took issue with her

use of "reasonable pace," but the ALJ accounted for this by analyzing the functional effects of Dell's mental limitations from other medical sources in the record. "[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Here, the ALJ relied on both the medical opinions and the rest of the record to create the logical bridge. *See Laughton v. O'Malley*, No. 1:23-CV-35-HAB, 2024 WL 748752, at \*4 (N.D. Ind. Feb. 22, 2024) ("the ALJ discussed the weight to give to the opinions and did not ignore them and, in fact, gave partial weight to two of the reviewing consultants' opinions.").

Dell otherwise makes the same argument as above that the ALJ's conclusions about Dell's mental limitations are not supported by substantial evidence. This argument substantially overlaps with Dell's first argument on cherry picking the record. The question is always whether the ALJ used the record to support his RFC findings. As explained above, the ALJ provided substantial evidence for his reasoning. The ALJ did not play doctor when determining the RFC.

## Conclusion

For the reasons discussed, the Court hereby **DENIES** the relief requested in Plaintiff Richard D. Dell's Opening Brief [DE 21] and **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 29th day of September 2025.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT